UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

    v.

                                    CRIMINAL NO. 2:03cr161

DARYL WILKES,

          Defendant.

## OPINION

This matter comes before the court on Defendant's "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" ("Motion"), filed on January 12, 2022. ECF No. 58. For the reasons explained below, Defendant's Motion is **DENIED**.

### I. Background

On March 4, 2004, a jury found Defendant guilty of thirty-six (36) counts of a fifty-two (52) count Indictment. ECF No. 21. These convictions included various drug charges and, importantly for this Motion, three charges for knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). See id. The three firearm charges were under Counts Three, Thirty-eight, and Forty. On June 16, 2004, the court sentenced Defendant to two hundred ninety-two (292) months concurrently on all drug convictions; sixty (60) months consecutively on Count Three, the first § 924 firearm count; and three hundred (300) months consecutively for each of Counts Thirty-eight and Forty, the two subsequent firearm charges. ECF

No. 25. The total term of incarceration was nine hundred fifty-two (952) months.

On June 30, 2004, Defendant noted his appeal. ECF No. 26. On June 20, 2006, the Fourth Circuit affirmed the convictions but vacated the sentence and remanded to the district court for resentencing. ECF No. 37. On October 3, 2006, the court resentenced Defendant and reduced his sentence on all the drug convictions from two hundred ninety-two (292) months to one hundred twenty (120) months to be served concurrently. ECF No. 39. In all other respects, the Judgment Order entered on June 16, 2004, and filed on June 18, 2004, remained the same and in full force and effect. The new total sentence was seven hundred eighty (780) months.

On October 4, 2007, Defendant filed a Motion to Vacate Under § 2255. ECF No. 40. The court held an evidentiary hearing on the § 2255 Motion on February 28, 2008. In a March 12, 2008, Memorandum Order, the court granted in part and denied in part the § 2255 Motion. ECF No. 45. The court vacated Defendant's convictions on Count Two, a drug charge, and Count Three, the first firearm charge. Id. The court denied the § 2255 Motion as to Defendant's conviction under Count Thirty-eight. Id. On May 5, 2008, the court amended Defendant's Judgment, in light of its previous Memorandum Order, dismissing the two vacated counts and reducing the sentence for the second § 924 conviction, Count Thirty-eight, from three hundred (300) months to sixty (60) months. ECF No. 46. The rest of

2

the Judgment remained the same, leaving a total sentence of four hundred eighty (480) months. On May 12, 2008, Defendant noted his appeal of the amended Judgment. ECF No. 47. On November 26, 2008, the Fourth Circuit affirmed the amended Judgment. ECF No. 50.

On October 27, 2016, President Barack Obama commuted Defendant's sentence from four hundred eighty (480) months to three hundred (300) months. ECF No. 52 at 2.

On June 28, 2017, Defendant filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2). ECF No. 53. On July 28, 2017, the court denied the motion. ECF No. 54.

On January 12, 2022, Defendant filed the Motion presently before the court, ECF No. 58. In his Motion and associated briefs, Defendant posits three (3) reasons that he argues, in combination, warrant a reduction in sentence to time served: (1) The spread of the novel Coronavirus ("COVID-19"); (2) sentencing disparities created by the passage of the First Step Act; and (3) his rehabilitation over his years of incarceration. See ECF No. 58 at 7.

The United States filed a Response in Opposition on February 10, 2022. ECF No. 62. It submits that Defendant's sentence should stand, arguing that Defendant has not satisfied the heightened standard required for relief under § 3582(c)(1)(A)(i). See id. at 14, 23. The United States reasons that Defendant has not shown that the COVID-19 pandemic, the

3

sentencing disparity he faces, or his claimed rehabilitation amounts to "extraordinary and compelling reasons" for compassionate release. See id. at 1, 11, 16, 23. Alternatively, the United States argues that even if the court finds Defendant has established "extraordinary and compelling reasons," granting the Motion is not appropriate, as the factors enumerated in 18 U.S.C. § 3553(a) counsel against a sentence reduction. Id. at 14, 24. Defendant filed his Reply on March 14, 2022. ECF No. 65. Having been fully briefed, the Motion is now ripe for judicial determination.

## II. Exhaustion of Remedies

Before the court may consider a motion under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf," or there must have been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Id. § 3582(c)(1)(A). The Fourth Circuit recently explained that defendants may satisfy this exhaustion requirement by "wait[ing] 30 days from the date of their initial request to file a motion in the district court," even if the warden has already responded to their request. United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021) (collecting cases). The court further clarified that the exhaustion requirement "is a non-jurisdictional

4

claim-processing rule," and therefore "may be waived or forfeited." Id. at 130.

Defendant submitted a request for compassionate release to the warden of his institution on December 2, 2021. ECF No. 59-1 at 3. Because more than thirty (30) days have passed since Defendant made his request, he has satisfied the threshold exhaustion requirement. See 18 U.S.C. § 3582(c)(1)(A).

### III. Merits of Defendant's Motion

For a court to reduce a defendant's sentence under § 3582(c)(1)(A)(i), it must find that "extraordinary and compelling reasons" justify such a reduction. The defendant bears the burden of showing that this requirement is satisfied. See, e.g., United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021); United States v. Noel, No. 3:08-cr-186-03, 2021 WL 1602402, at *2 (E.D. Va. Apr. 23, 2021) (Payne, J.). Even if a defendant carries his burden, a court may only reduce his sentence "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A). Any such reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." Id.; see United States v. McCoy, 981 F.3d 271, 275-76 (4th Cir. 2020).

In McCoy, the Fourth Circuit held that, in the context of prisoner-filed § 3582(c)(1)(A) motions, "there currently exists no 'applicable policy statement'" because the Commission has not

issued a policy statement since the passage of the First Step Act. 981 F.3d at 281-82 (alteration omitted). Therefore, until the Sentencing Commission issues an updated policy statement, "district courts are 'empowered to consider <u>any</u> extraordinary and compelling reason for release that a defendant might raise.'" <u>Id.</u> at 284 (alteration omitted) (quoting <u>United States v. Brooker</u>, 976 F.3d 228, 230 (2d Cir. 2020)); <u>see</u> <u>United States v. Davis</u>, No. 21-6960, 2022 WL 127900, at *1-2 (4th Cir. Jan. 13, 2022) (holding district court abused discretion in determining that certain claims "categorically" could never "establish a sufficient reason for release"). In particular, the Fourth Circuit held that courts "may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." <u>McCoy</u>, 981 F.3d at 285-86.

Although the policy statement in United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 1B1.13 is no longer binding on this court in this case after the Fourth Circuit's decision in <u>McCoy</u>, the court finds certain of its provisions useful in addressing the instant Motion. For example, the court will still consider "the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," U.S.S.G. § 1B1.13, and whether "[t]he defendant is . . . a danger to the safety of any other person or to the community," <u>id.</u> § 1B1.13(2), because these

considerations remain highly relevant to whether a reduction in sentence is warranted in this case.

## A. Extraordinary and Compelling Reasons

Defendant claims three circumstances that constitute "extraordinary and compelling reasons" for a reduction in sentence pursuant to § 3582(c)(1)(A)(i). For the reasons explained below, the court finds that none of these circumstances, individually or in combination, amount to an "extraordinary and compelling reason[]" for such a reduction. See Davis, 2022 WL 127900, at *2 (vacating and remanding denial of compassionate release where there was "no indication that the district court considered [the defendant's] circumstances, as a whole").

### 1. Effect of COVID-19 on Defendant

Defendant submits that the ongoing COVID-19 pandemic and its impact warrant a reduction in sentence. ECF No. 58 at 12. Defendant argues that the pandemic justifies early release because the virus has both put Defendant's health at risk and increased the punitive nature of his sentence. See id. at 13.

### i. COVID-19's Impact on Defendant's Health

"Fear of COVID doesn't automatically entitle a prisoner to release." United States v. Thompson, 984 F.3d 431, 435 (5th Cir. 2021). Rather, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility

7

to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Feiling, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (Novak, J.) (emphasis added).

"To establish a particularized susceptibility to COVID-19, courts have required defendants to provide evidence that they suffer from a medical condition identified by the Centers for Disease Control and Prevention ("CDC") as a COVID-19 risk factor." United States v. Chandler, Crim. No. 3:15-mj-122, 2020 WL 6139945, at *5 (E.D. Va. Oct. 19, 2020) (Novak, J.) (citing United States v. Beahm, No. 1:05-cr-249, 2020 WL 4514590, at *2 (E.D. Va. Aug. 5, 2020) (Hilton, J.); United States v. White, No. 3:18-cr-61, 2020 WL 3442171, at *5 (E.D. Va. June 23, 2020) (Hudson, J.)). However, to satisfy the "particularized susceptibility" requirement, a defendant must do more than merely point to a condition that constitutes a COVID-19 risk factor. See Chandler, 2020 WL 6139945, at *5 (finding requirement not satisfied where the defendant's asthma was "mild and intermittent"). Instead, defendants must provide evidence establishing why their condition is so severe that it warrants a sentence reduction. See id. (noting that the relevant medical records did not indicate that the defendant's asthma was severe enough to constitute "an extraordinary and compelling reason for his compassionate release").

Here, Defendant does not claim to suffer from any condition identified as a COVID-19 risk factor. See ECF No. 62 at 8. Instead, Defendant argues that he has a greater susceptibly because of his age, fifty-two years old, and his membership of a susceptible racial minority group. See ECF No. 65 at 6. However, a relatively healthy person, such as Defendant, does not face a particularized susceptibility to COVID-19. See United States v. Doyle, No. 3:15cr191, 2020 WL 4590517, at *5 (E.D. Va. Aug. 10, 2020) (Lauck, J.) (finding that a general risk of COVID-19 does not create an extraordinary and compelling reason to release a relatively healthy defendant).

Furthermore, Defendant has been fully vaccinated and boosted against COVID-19. See ECF No. 62-3. Defendant's inoculation vastly decreases his chances both of contracting COVID-19, and of suffering severe complications if infected. See United States v. Sanders, No. CR SAG-06-087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) (holding that defendant's "vaccination status remove[d] his other medical conditions from the category of risk constituting an 'extraordinary and compelling reason,'" and collecting cases concluding the same); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order."). While not necessarily

dispositive in this case, Defendant's vaccination status severely limits his claim for compassionate release.

Having reviewed Defendant's medical records and taking into account his vaccination status, the court finds that Defendant has failed to establish a particularized susceptibility to COVID-19.

Moreover, Defendant has not shown that he faces a particularized risk of contracting COVID-19 at his facility, FCI Petersburg Low. A large number of inmates and staff at this facility and the other facilities within the Petersburg correctional complex have been inoculated against COVID-19 with vaccines shown to be highly effective[1] at preventing serious COVID-19 illness.[2] This vaccination effort has apparently succeeded in staving off major outbreaks of the disease: as of April 11, 2022, FCI Petersburg Low had one (1) active case of COVID-19 among inmates and zero (0) among staff members.[3] The court finds that the low prevalence of COVID-19 at Defendant's facility, particularly in light of the BOP's ongoing mitigation efforts,

---

[1]  CDC, Benefits of Getting a COVID-19 Vaccine, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html.

[2]  As of April 11, 2022, 475 staff members and 2419 prisoners at FCC Petersburg were fully vaccinated against COVID-19. See Fed. Bureau of Prisons, COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/ (vaccination statistics)

[3]  See Fed. Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/.

does not subject Defendant to a particularized risk of contracting the virus. See United States v. Spencer, 521 F. Supp. 3d 606, 612 (E.D. Va. 2021) (Smith, J.) (denying motion where the defendant's facility had few active COVID-19 cases among inmates).

Defendant has not demonstrated a particularized susceptibility to COVID-19, or that he faces a particularized risk of contracting the virus at FCI Petersburg Low, and therefore has not shown extraordinary or compelling reasons justifying a sentence reduction on this basis.

### ii. COVID-19's Impact on the Severity of the Sentence

Defendant also claims that COVID-19's impact on his conditions of confinement justify compassionate release. See ECF No. 58 at 13. While the pandemic may have made the conditions of his imprisonment more difficult, harsh conditions in a BOP facility alone do not create an extraordinary and compelling reason for release. See United States v. Burks, No. 3:14-cr-208-MOC-1, 2021 WL 1394857, at *4 (W.D.N.C. Apr. 13, 2021). In point-of-fact, every inmate in the BOP must deal with similar restrictions on movement and elevated health protocols in response to COVID-19. Defendant has not presented any reason for the court to conclude he faces extraordinary restrictions. Moreover, the court concludes that the limited risk COVID-19 poses to Defendant and the generally applicable prison restrictions do not together amount to extraordinary and compelling circumstances.

## 2. Sentencing Disparities

Defendant argues that his "stacked" § 924(c) sentences create an unwarranted sentencing disparity that justifies compassionate release under § 3582(c)(1)(A)(i). See ECF No. 58 at 7. In evaluating Defendant's claim, the court will first review the Fourth Circuit's decision in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020), laying the groundwork for the theories upon which Defendant relies. Second, the court will discuss the specific effect of McCoy on Defendant and his sentence. Third, and finally, the court will conduct an "individualized assessment[]" of all of the facts and circumstances of Defendant's case, including his characteristics, sentence, criminal history, and postconviction conduct. See id. at 286.

### i. United States v. McCoy

In McCoy, the defendants were each convicted of and sentenced on multiple offenses under 18 U.S.C. § 924(c) prior to the December 21, 2018, passage of the First Step Act. 981 F.3d at 275, 277-79. At the time of their sentencing hearings, § 924(c)(1)(C) required a so-called "stacked" sentence for a "second or subsequent conviction" under § 924(c) - that is, either enhanced mandatory minimum sentences of twenty (20) years or twenty-five (25) years for a second or subsequent § 924(c) conviction, depending upon the statute at the time of conviction. See id. at 275, 277, 278 n.3. Pursuant to then-applicable law, "a conviction was treated as

12

'second or subsequent,' triggering the [enhanced mandatory] minimum sentence, even if the first § 924(c) conviction was obtained in the same case." McCoy, 981 F.3d at 275. The First Step Act "ended this practice . . . by clarifying that the [enhanced] mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and already 'has become final.'" Id. (emphasis added) (quoting 18 U.S.C. § 924(c)(1)(C)).

Although the First Step Act did not make this reform retroactive to cases in which defendants have already been sentenced, the defendants in McCoy filed motions for compassionate release, requesting that the court take into consideration the fact that their sentences would be much shorter if they were sentenced under the First Step Act. 981 F.3d at 274. The district courts granted the motions, and the defendants' sentences were reduced to time served. Id. at 274, 277, 279. The United States appealed, and the Fourth Circuit affirmed, holding that district courts reviewing motions for compassionate release may properly consider "the length of [] defendants' sentences and the fact that those sentences would be dramatically shorter today . . . ." Id. at 285. The Fourth Circuit reasoned that while not all defendants convicted under § 924(c) should receive new sentences, courts may grant relief on a case-by-case basis where a defendant meets "the heightened standard of 'extraordinary and compelling reasons' . . . ." See id. at 287.

## ii. Defendant's § 924(c) Convictions

Defendant's Amended Judgment includes two convictions for violating 18 U.S.C. § 924(c), Counts Thirty-eight and Forty of the Indictment. ECF Nos. 1, 46. Prior to these convictions, Defendant had not sustained a conviction for a violation of § 924(c). See PSR ¶¶ 34-38. Because Defendant was convicted and sentenced prior to the passage of the First Step Act, the court was required to treat Defendant's conviction on Count Forty as a second or subsequent § 924(c) conviction subject to an enhanced mandatory minimum penalty.[4] Accordingly, at Defendant's resentencing, the court imposed the mandatory minimum sentences of five (5) years on Count Thirty-eight and twenty-five (25) years on Count Forty, both to run consecutively. ECF No. 46.

Because the offense conduct giving rise to Count Forty did not occur after another § 924(c) conviction had "become final," Defendant would face a sentence on Count Forty of only five (5) years consecutive, if he were sentenced today for the same crime. See 18 U.S.C. § 924(c)(1)(C) (providing that prior conviction must have "become final"). Thus, Defendant was sentenced to a term of imprisonment on Count Forty that is twenty (20) years longer than

---

[4] Defendant's Judgment originally included three counts for violations of § 924(c); however, the court vacated one of the counts, Count Three, and, accordingly, reduced the sentence on Count Thirty-eight to match the sentence for a first time § 924(c) conviction. See ECF Nos. 25, 45, 46.

"the sentence[] Congress now believes to be an appropriate penalty for [Defendant's] conduct." McCoy, 981 F.3d at 285.[5]

### iii. Individualized Assessment of Defendant's Sentence

This disparity alone, however, does not automatically give rise to a compelling reason for a reduction in sentence. See McCoy, 981 F.3d at 287 ("[O]nly those defendants who can meet the heightened standard of 'extraordinary and compelling reasons' may obtain relief."). When deciding to reduce the McCoy defendant's sentences to time served, the district courts "took seriously the requirement that they conduct individualized inquiries," and considered "such factors as the defendants' relative youth at the time of their offenses, their post-sentencing conduct and rehabilitation, and the very substantial terms of imprisonment they already served." McCoy, 981 F.3d at 286, 288 (noting that the defendants were between nineteen (19) and twenty-four (24) years old). The courts also considered the defendants' lack of substantial criminal histories at the time they committed their relevant offenses. Id. at 277-79 (discussing criminal histories and noting that none of the defendants had served jail time).

---

[5] Defendant's sentence on Count Forty is also twenty (20) years longer than the Guidelines sentence that would apply if he were sentenced today. The applicable Guidelines sentence for Count Forty would change as a result of the First Step Act's reduced statutory minimum sentence because "the guideline sentence [for a violation of § 924(c)] is the minimum term of imprisonment required by statute." U.S.S.G. § 2K2.4(b).

Though Defendant has served a substantial term of imprisonment thus far, that is where his similarities with the McCoy defendants end. According to the Presentence Report ("PSR"), Defendant carried out the drug conspiracy at the heart of his charges between the ages of twenty-seven (27) and thirty-two (32). See PSR ¶ 5. Defendant also had a more substantial criminal history before committing the relevant offenses, including two convictions for Assault and Battery.[6] PSR ¶¶ 34, 36. In contrast, none of the McCoy Defendants served even a day of prison before committing their underlying offenses. See McCoy, 981 F.3d at 277-79. Finally, Defendant's record of post-sentencing conduct and rehabilitation is commendable but uncompelling.[7]

The court also considers the reductions Defendant has already received. In 2016, then President Obama commuted Defendant's sentence, reducing it by one hundred eighty (180) months. ECF No. 52. Unlike judges at sentencing, executive clemency is not limited by sentencing guidelines and statutory minimums; the President had the power to reduce Defendant's sentence to time served.[8] Instead, the President left Defendant with three hundred (300) months of

---

[6] Defendant had a Criminal History Category of III at sentencing. PSR ¶ 78.

[7] See infra Part III.A.3.

[8] In the same executive grant of clemency, the President reduced the sentences of several dozen people down to only four (4) months. See ECF No. 52 at 1.

16

incarceration. Id. at 2. The President had the opportunity to consider many of the factors before the court now, including Defendant's rehabilitation, criminal history, offense conduct, and age at the time of the offenses.

After the clemency, Defendant's sentencing disparity dropped from twenty (20) years to five (5) years above the sentence Congress now deems warranted for Defendant's crimes of conviction. See ECF No. 58 at 3-4.[9] Upon this individualized assessment of Defendant's sentence, and the reductions thereto, the extent to which Defendant can claim extraordinary and compelling circumstances here is diminished.

### 3. Rehabilitation and Other Postconviction Conduct

Defendant argues that he has engaged in "exceptional rehabilitation during his incarceration" that warrants a sentence reduction. See ECF No. 58 at 7; 16. Defendant points to his participation in classes, his work as an orderly in his facility, and his lack of infractions while incarcerated. See id. at 16, 18;

---

[9] If Defendant was sentenced today to the same one hundred twenty (120) months on the drug offenses and the mandatory sixty (60) months consecutive for each § 924(c) offense, the total sentence would be two hundred forty (240) months. Therefore, Defendant's pre-clemency sentence of four hundred eighty (480) months had a disparity of two hundred forty (240) months or twenty (20) years; whereas, Defendant's current sentence of three hundred (300) months has a disparity of sixty (60) months or five (5) years.

ECF No. 65 at 13; see also ECF No. 62-6 (listing Defendant's courses and programs taken in prison).

The court first notes that rehabilitation, alone, does not constitute an "extraordinary and compelling" reason for a reduction in sentence. 28 U.S.C. § 994(t). That said, the court recognizes that it may consider rehabilitation and other postconviction conduct, when paired with other factors, as an "extraordinary and compelling reason[]" for relief. 18 U.S.C. § 3582(c)(1)(A)(i); see also Davis, 2022 WL 127900, at *1 (quoting McCoy, 981 F.3d at 286 n.9) ("[S]uccessful rehabilitation efforts can be considered as 'one among other factors.'"). On these facts, however, Defendant's rehabilitation argument does not articulate an extraordinary or compelling reason for a reduction in sentence in light of the full considerations herein of other matters raised by Defendant and the factors under 18 U.S.C. § 3553(a).[10]

While the court commends Defendant for taking steps to improve himself, these steps are not "extraordinary." Instead, it appears to the court that Defendant has simply "do[ne] the things that prisoners are supposed to do" while incarcerated. United States v. Logan, 532 F. Supp. 3d 725, 735 (D. Minn. 2021) ("Prisoners are supposed to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so

---

[10] See infra Part III.B.

means that he has met baseline expectations, not that he has done something extraordinary.").

On this record, the court finds that Defendant's rehabilitation, in combination with the other reasons offered, does not warrant a reduction in sentence.

## B. Section 3553(a) Factors

A court may only reduce a defendant's sentence under § 3582(c)(1)(A) "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable . . . ." 18 U.S.C. § 3582(c)(1)(A). That said, "[s]ection 3582(c)(1) permits a district court to reduce a sentence in 'any case' - not just cases where a sentence has been substantially served; not just in cases involving low-level or non-violent offenses." United States v. Kibble, 992 F.3d 326, 334 (4th Cir. 2021) (Gregory, C.J., concurring) (citing United States v. Gonzales, 520 U.S. 1, 5 (1997)).

However, even if Defendant had presented "extraordinary and compelling reasons," the court finds that a reduction in sentence would not be proper in this case, as the § 3553(a) factors weigh heavily against Defendant's release. See Kibble, 992 F.3d at 330, 332 (majority opinion affirming denial of a motion for compassionate release where the defendant's "health conditions . . . amounted to extraordinary and compelling circumstances," but "the § 3553(a) factors counseled against a sentence reduction").

First, the court acknowledges and credits Defendant's steps towards rehabilitation.[11] The court notes that Defendant has served eighteen (18) years of his already reduced twenty-five (25) year sentence, but also notes that he is scheduled to be released on June 17, 2025, taking into account good time credit. See BOP Inmate Locator; ECF No. 58 at 7; see also Kibble, 992 F.3d at 331 (recognizing that district courts are "entitled to consider the amount of time [defendants] ha[ve] served as one factor in the § 3553(a) analysis" and citing United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020) and United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020)). While the amount of time remaining on Defendant's sentence may favor his release, the court concludes that these considerations do not outweigh the seriousness of Defendant's offense conduct[12] and the other factors under 18 U.S.C. § 3553(a). See United States v. Bowser, 539 F. Supp. 3d 572, 576–77 (E.D. Va. 2021) (Smith, J.) (denying motion for compassionate release, in part, on this basis).

Though the court will not recite every aspect of the facts of Defendant's case here, it will highlight of some of the most

---

[11] See supra Part III.A.3. (discussing Defendant's efforts at rehabilitation).

[12] Defendant had an Offense Level of 38 at sentencing. PSR ¶ 77.

troubling facts.[13] For about seven (7) years, Defendant was a major distributor of powder and crack cocaine in the Virginia Beach, Virginia, area. PSR ¶ 29. The conspiracy involved dozens of kilograms of narcotics, the use of firearms, and the procurement of narcotics across state lines. See id. ¶¶ 21, 25, 29; ECF No. 62 at 15.

The court remains concerned about the criminal history Defendant accrued prior to the current offenses for which he is incarcerated. His earlier convictions include, but are not limited to, the following: Assault and Battery (1999), PSR ¶ 34; Failure to Appear (1999), id. ¶ 35; Destruction of Property Under $1,000 (1999), id. ¶ 36; Assault and Battery (1999), id.; and Driving Under the Influence (2001), id. ¶ 38.

It appears as though shorter terms of incarceration and suspended sentences did not deter him from subsequent criminal conduct. This criminal record, while not the most serious, indicates a lack of respect for the law, a lack of deterrence, and a need to further protect the public. See ECF No. 62 at 15.

Defendant's extremely serious offense conduct, combined with Defendant's pre-offense criminal history, satisfies the court that Defendant's current sentence is necessary "to reflect the

---

[13] Since Defendant went to trial there is no signed Statement of Facts; however, the PSR details his offense conduct in paragraphs four to twenty-six (4-26) and describes his role in the offense in paragraph twenty-nine (29).

seriousness of the offense, to promote respect for the law," "to afford adequate deterrence to criminal conduct," and, most importantly, "to protect the public from further crimes of the [D]efendant." 18 U.S.C. § 3553(a)(2)(A)-(C).

### IV. Conclusion

Upon an individualized inquiry into Defendant's sentence with the reductions thereto, together with his offense conduct, criminal history, personal characteristics, post-offense rehabilitation, and the other arguments for compassionate release addressed herein in Part III.A.1 and 2, the court concludes that COVID-19 or the intervening changes in sentencing law relevant to Defendant's offenses of conviction do not constitute an "extraordinary and compelling reason[]" justifying his release or a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).

Accordingly, based on the foregoing, and having considered the effect of McCoy on Defendant's sentence and all the factors under 18 U.S.C. § 3553(a), Defendant's Motion for Compassionate Release, ECF No. 58, is **DENIED.** The Amended Judgment entered on May 5, 2008, ECF No. 46, remains in full force and effect, with the reduction in sentence from the grant of clemency filed on October 28, 2016, ECF No. 52.

The Clerk is **DIRECTED** to forward a copy of this Opinion to Counsel for Defendant, the United States Attorney, and the Bureau of Prisons.

IT IS SO ORDERED.

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

April 13, 2022